In the
# United States Court of Appeals
### for the Fourth Circuit

**TIMOTHY CAPPS,**     *Plaintiff – Appellant*,

v.

**NEWMARK SOUTHERN REGION, LLC;
NEWMARK & COMPANY REAL ESTATE, INC.,**

*Defendants – Appellees*,

and

**DOES 1-25,**

*Defendants.*

**ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA**

---

## REPLY BRIEF

---

Matthew Nis Leerberg
Troy D. Shelton
FOX ROTHSCHILD LLP
P.O. Box 27525
Raleigh, NC 27611
(919) 755-8700

*Attorneys for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ................................................................................. 1

ARGUMENT ....................................................................................... 1

   I.  The District Court's Misallocation of the Burden of Proof
      Was Reversible Error ................................................................. 1

     A. Newmark bore the burden of proving cause for termination ........ 2

     B. The district court's misallocation of the burden of proof
        was not harmless ........................................................... 5

  II. Newmark Failed to Prove That Capps Materially and
      Incurably Breached the Contract ................................................ 8

     A. Curability is a question of law reviewed de novo .......................... 9

     B. Newmark has mangled the law of curability ............................. 11

     C. Newmark failed to prove that Capps's purported breaches
        were material and incurable ....................................................... 16

 III. Newmark Can Be Held Liable for Aiding and Abetting
      Breaches of Fiduciary Duty ......................................................... 21

 IV. Capps Stated a Claim for Civil Conspiracy ................................. 27

  V. Newmark's Misconduct Was "In or Affecting Commerce" ............. 30

CONCLUSION ..................................................................................... 31

CERTIFICATE OF COMPLIANCE ....................................................... 33

# TABLE OF AUTHORITIES

**Cases:**

*Ahmed v. Porter,*
No. 1:09CV101, 2009 WL 2581615 (W.D.N.C. June 23, 2009) ...........23

*Alesayi Beverage Corp. v. Canada Dry Corp.,*
947 F. Supp. 658 (S.D.N.Y. 1996)..................................................18, 19

*Bankard v. First Carolina Commc'ns, Inc.,*
No. 89 C 8571, 1991 WL 268652 (N.D. Ill. Dec. 5, 1991) ...................24

*Battleground Veterinary Hosp., P.C. v. McGeough,*
No. 05 CVS 18918, 2007 WL 3071618
(N.C. Bus. Ct. Oct. 19, 2007) .............................................................25

*Belk v. Charlotte-Mecklenburg Bd. of Educ.,*
269 F.3d 305 (4th Cir. 2001)............................................................7, 8

*Blow v. Shaughnessy,*
364 S.E.2d 444 (N.C. Ct. App. 1988) ..................................................23

*Bottom v. Bailey,*
767 S.E.2d 883 (N.C. Ct. App. 2014) ............................................25, 27

*Boykin v. Bennett,*
118 S.E.2d 12 (N.C. 1961)....................................................................22

*Broussard v. Meineke Disc. Muffler Shops, Inc.,*
155 F.3d 331 (4th Cir. 1998)................................................................25

*Burns v. Gulf Oil Corp.,*
98 S.E.2d 339 (N.C. 1957).............................................................28, 29

*Chem-Age Indus., Inc. v. Glover,*
652 N.W.2d 756 (S.D. 2002)................................................................25

*ComTran Grp., Inc. v. U.S. Dep't of Lab.,*
722 F.3d 1304 (11th Cir. 2013)..............................................................6

*Drapkin v. Mafco Consol. Grp., Inc.*,
  818 F. Supp. 2d 678 (S.D.N.Y. 2011) ................................................... 13

*Duke Energy Int'l, L.L.C. v. Napoli*,
  748 F. Supp. 2d 656 (S.D. Tex. 2010) ................................................. 23

*Ehrenhaus v. Baker*,
  717 S.E.2d 9 (N.C. Ct. App. 2011) ...................................................... 27

*Equitable Life Assurance Soc'y of U.S. v. Am. Bankers, Ins. Co.*,
  No. 88-535-CIV-5-H, 1995 U.S. Dist. LEXIS 10880
  (E.D.N.C. May 12, 1995) ..................................................................... 26

*Felsen v. Sol Cafe Mfg. Corp.*,
  249 N.E.2d 459 (N.Y. 1969) .................................................................. 3

*Future Grp., II v. Nationsbank*,
  478 S.E.2d 45 (S.C. 1996) ................................................................... 24

*Gilbert v. Bagley*,
  492 F. Supp. 714 (M.D.N.C. 1980) ..................................................... 22

*Greensboro Rubber Stamp Co. v. Se. Stamp & Sign, Inc.*,
  No. COA10-914, 2011 WL 2462933
  (N.C. Ct. App. June 21, 2011) ............................................................ 24

*Harris v. Rivera*,
  454 U.S. 339 (1981) ............................................................................ 16

*Henry A. Knott Co. v. Chesapeake & Potomac Tel. Co.*,
  772 F.2d 78 (4th Cir. 1985) ................................................................. 30

*Holmes v. Young*,
  885 P.2d 305 (Colo. Ct. App. 1994) .................................................... 24

*In re EBW Laser, Inc.*,
  No. 05-10220C-7G, 2008 WL 1805575
  (Bankr. M.D.N.C. Apr. 21, 2008) ....................................................... 24

*In re Lee Memory Gardens, Inc.*,
   333 B.R. 76 (Bankr. M.D.N.C. 2005) ...................................................24

*In re Parmalat*,
   383 F. Supp. 2d 587 (S.D.N.Y. 2005) ..................................................24

*In re Vendsouth, Inc.*,
   No. 00-10112C-7G, 2003 WL 22399581
   (Bankr. M.D.N.C. Oct. 10, 2003) .......................................................24

*JH ex rel. JD v. Henrico Cty. Sch. Bd.*,
   395 F.3d 185 (4th Cir. 2005) .................................................................6

*Klein Indep. Sch. Dist. v. Hovem*,
   690 F.3d 390 (5th Cir. 2012) ...............................................................11

*Koch Measurement Devices, Inc. v. Armke*,
   No. 12 CVS 3478, 2013 WL 5639221
   (N.C. Super. Ct. Oct. 14, 2013) ..........................................................29

*Laber v. Harvey*,
   438 F.3d 404 (4th Cir. 2006) ...............................................................30

*Lee v. Certainteed Corp.*,
   123 F. Supp. 3d 780 (E.D.N.C. 2015) .................................................26

*Lewis v. Heckler*,
   808 F.2d 1293 (8th Cir. 1987) ...............................................................6

*Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*,
   957 F.2d 1153 (4th Cir. 1992) .............................................................26

*Linton v. Unexcelled Fire-Works Co.*,
   27 N.E. 406 (N.Y. 1891) ........................................................................2

*Miller v. Mercy Hosp., Inc.*,
   720 F.2d 356 (4th Cir. 1983) ...............................................................10

*Moses H. Cone Mem'l Hosp. Operating Corp. v. Conifer Physician Servs., Inc.*,
No. 1:13CV651, 2017 WL 1378144 (M.D.N.C. Apr. 11, 2017) ............ 12

*Otto Gerdau Co. v. Lambert's Point Docks, Inc.*,
733 F.2d 343 (4th Cir. 1984) ................................................................. 7

*Owen v. Com. Union Fire Ins. Co. of N.Y.*,
211 F.2d 488 (4th Cir. 1954) ................................................................. 7

*Paradis v. Charleston Cty. Sch. Dist.*,
861 S.E.2d 774 (S.C. 2021) ................................................................. 25

*Pisani v. Westchester Cty. Health Care Corp.*,
424 F. Supp. 2d 710 (S.D.N.Y. 2006) .................................................... 4

*R & R Farm Enters., Inc. v. Fed. Crop Ins. Corp., Dep't of Agric.*,
788 F.2d 1148 (5th Cir. 1986) ............................................................... 6

*Raleigh Wake Citizens Ass'n v. Wake Cty. Bd. of Elections*,
827 F.3d 333 (4th Cir. 2016) ................................................................. 9

*Rebecca Broadway Ltd. P'ship v. Hotton*,
37 N.Y.S.3d 72 (App. Div. 2016) ........................................................ 14

*Rohan v. Networks Presentations LLC*,
375 F.3d 266 (4th Cir. 2004) .......................................................... 9, 19

*Schaffer ex rel. Schaffer v. Weast*,
554 F.3d 470 (4th Cir. 2009) ................................................................. 6

*Sea "B" Mining Co. v. Addison*,
831 F.3d 244 (4th Cir. 2016) ................................................................. 5

*Septembertide Pub., B.V. v. Stein & Day, Inc.*,
884 F.2d 675 (2d Cir. 1989) ............................................................... 13

*Shelter Mut. Ins. Co. v. White*,
930 S.W.2d 1 (Mo. Ct. App. 1996) ...................................................... 24

*Sinco, Inc. v. Metro-N. Commuter R. Co.*,
    133 F. Supp. 2d 308 (S.D.N.Y. 2001) ................................................... 14

*Smith v. CPC Int'l, Inc.*,
    33 F. App'x 586 (2d Cir. 2002) ................................................. 4

*Sompo Japan Ins. Inc. v. Deloitte & Touche, LLP*,
    No. 03 CVS 5547, 2005 WL 1412741
    (N.C. Bus. Ct. June 10, 2005) ............................................... 23

*Southland Corp. v. Froelich*,
    41 F. Supp. 2d 227 (E.D.N.Y. 1999) ...................................... 13

*Spitz v. Heinze*,
    79 N.Y.S. 187 (App. Div. 1902) ............................................ 3

*Stetser v. TAP Pharm. Prod., Inc.*,
    598 S.E.2d 570 (N.C. Ct. App. 2004) .................................... 22

*Tchrs. Ins. & Annuity Ass'n of Am. v. Coaxial Commc'ns*
    *of Cent. Ohio, Inc.*,
    807 F. Supp. 1155 (S.D.N.Y. 1992) ...................................... 14

*Trotman v. Bd. of Trustees of Lincoln Univ.*,
    635 F.2d 216 (3d Cir. 1980) .................................................. 6

*U.S. ex rel. Bilyew v. Franzen*,
    686 F.2d 1238 (7th Cir. 1982) ............................................... 6

*U.W. Marx, Inc. v. Koko Contracting, Inc.*,
    2 N.Y.S.3d 276 (App. Div. 2015) .......................................... 14

*Veer Right Mgmt. Grp., Inc. v. Czarnowski Display Serv., Inc.*,
    822 S.E.2d 597 (2019) .......................................................... 27

*Wade v. Danek Med., Inc.*,
    182 F.3d 281 (4th Cir. 1999) ................................................ 26

*Walker v. Abbott Labs.*,
   340 F.3d 471 (7th Cir. 2003) ................................................................. 30

*Weast v. Schaffer ex rel. Schaffer*,
   377 F.3d 449 (4th Cir. 2004) ................................................................... 6

*Wegman v. Dairylea Co-op., Inc.*,
   376 N.Y.S.2d 728 (App. Div. 1975) ....................................................... 3

*White v. Thompson*,
   691 S.E.2d 676 (N.C. 2010) ................................................................... 30

*White v. Washington Pub. Power Supply Sys.*,
   692 F.2d 1286 (9th Cir. 1982) ................................................................. 6

*Whiteside v. Gill*,
   580 F.2d 134 (5th Cir. 1978) ................................................................... 7

*Williams v. Action for Better Cmty., Inc.*,
   380 N.Y.S.2d 138 (App. Div. 1976) ....................................................... 3

**Rules:**

Fed. R. Civ. P. 52 ..................................................................................... 9

**Other Authorities:**

28 David D. Siegel, *New York Practice: New York Contract Law*
   § 13:6 (2d ed. 2020) ............................................................................... 2

E. Allan Farnsworth, *Farnsworth on Contracts* § 8.18
   (2d ed. 1998) ........................................................................................ 14

Restatement (Second) of Contracts
   (Am. Law Inst. 1981) .................................................................. *passim*

William H. Lawrence, *Cure After Breach of Contract Under the
   Restatement (Second) of Contracts*, 70 Minn. L. Rev. 713 (1986) ....... 11

## INTRODUCTION

Newmark's response brief asks this Court to affirm a very different kind of trial than Americans are used to. To Newmark, it doesn't matter whether the burden of proof is assigned to the wrong party. It doesn't matter if the trial court fails to determine either of the key issues to be tried. And it doesn't matter that the protections in an employee's contract are swept aside in favor of expediency.

Thankfully, that is not how the law works. The point of an appeal is to ensure that the law was correctly applied and that the facts were found through proper reasoning. Capps is appealing because he was denied both.

## ARGUMENT

### I. The District Court's Misallocation of the Burden of Proof Was Reversible Error.

In his opening brief, Capps showed that controlling New York law allocates the burden of proving "cause" for termination to the terminating party. In response, Newmark ignores that narrow question, instead citing general contract law principles outside the context of terminations for cause. Newmark argues alternatively that misallocating the burden of proof was harmless error. Both positions lack legal support.

### A. Newmark bore the burden of proving cause for termination.

Capps's opening brief sets forth the law governing the burden of proof that should have applied in this case. If a contract distinguishes between termination *with* and *without* cause, then the burden of proving cause for termination rests with the terminating party. Indeed, that's how New York's leading contracts treatise explains the law: "Where a contract may be terminated only for good cause, the terminating party has the burden of showing that it had good cause for terminating the agreement." 28 David D. Siegel, *New York Practice: New York Contract Law* § 13:6 (2d ed. 2020).

And that is how New York courts have long allocated the burden. For over a century, if an employee was terminated before "his term of service had expired, the burden is cast upon the employer of proving, and hence of alleging, facts in justification of the dismissal." *Linton v. Unexcelled Fire-Works Co.*, 27 N.E. 406, 406 (N.Y. 1891). That's because New York presumes a contractor has faithfully discharged his duties. *See id.* Thus, when the terminating party claims cause for termination, proof of that cause "is an affirmative defense, and the burden is upon the [terminating party] of both alleging and proving that [the terminated party]

was discharged for good and sufficient cause." *Spitz v. Heinze*, 79 N.Y.S. 187, 187 (App. Div. 1902).

That rule has been applied repeatedly. When a contracting party, even in a business-to-business contract, sues for improper termination, the terminated party "present[s] a prima facie case at trial" if he "prov[es] the existence of an employment contract for a specified term, discharge before expiration of that term and resulting damages." *Wegman v. Dairylea Co-op., Inc.*, 376 N.Y.S.2d 728, 733 (App. Div. 1975). "It is then incumbent upon [the terminating party] to prove justification for the discharge." *Id.* In other words, the *plaintiff* "need not allege or prove the reason for his discharge." *Id.* The proper analysis is straightforward:

> Felsen, on his direct case, proved the contract, its term, the fact of discharge prior to term and his damages as a result of the discharge. He thereby established a prima facie case and the burden fell upon defendant Sol Cafe as to the first cause of action for wrongful discharge, to establish the defense of discharge for cause.

*Felsen v. Sol Cafe Mfg. Corp.*, 249 N.E.2d 459, 460 (N.Y. 1969) (citation omitted).

Allocating the burden to the plaintiff is error. For example, in *Williams v. Action for Better Community, Inc.*, 380 N.Y.S.2d 138 (App. Div. 1976), the court chastised the appealing defendant, noting that the trial

court had erred in the defendant's own favor by misallocating the burden of proving cause to the plaintiff. *Id.* at 140 ("[T]he court erred in defendant's favor in charging that plaintiff had the burden to prove that his discharge was without justification whereas in fact defendant had the duty to plead and prove it as a defense . . . ." (cleaned up)); *see also Smith v. CPC Int'l, Inc.*, 33 F. App'x 586, 588 (2d Cir. 2002) ("In order for CPC to prevail, it needed to prove that it ended the distributorships for good cause."). Even the federal district court opinion cited in Newmark's brief appears to have allocated the burden just as Capps has requested. *Pisani v. Westchester Cty. Health Care Corp.*, 424 F. Supp. 2d 710, 719 (S.D.N.Y. 2006) ("[D]efendants must establish that as a matter of law, there was cause for plaintiff's termination.").

Newmark tries to distinguish some of these cases by saying that they only allocate the burden of proving cause to the terminating party when the terminated party's "performance" is "undisputed." *See* Resp. Br. at 15-16 (setting forth generic list of elements for a contract claim, including performance by plaintiff). But Newmark nowhere explains what it means by "performance" in this context, if it thinks that term is

different from "no cause for termination."  Nor do any of Newmark's cited cases suggest some extra hurdle for Capps.

Anyway, changing the subject to "performance" makes no sense.  Newmark never says how Capps failed to perform.  Capps worked for Newmark as a real estate broker until the day he was terminated.  At best, Newmark uses "performance" to mean performing without cause for termination.  But that just turns this case back into the multitude of other cases cited here and in Capps's opening brief, in which the burden of proving cause for termination was assigned to the terminating party.

## B.    The district court's misallocation of the burden of proof was not harmless.

The district court's misallocation of the burden of proof was not harmless, but a major structural error affecting the court's decision.

"[T]he harmless error rule is not a particularly onerous require-ment."  *Sea "B" Mining Co. v. Addison*, 831 F.3d 244, 253 (4th Cir. 2016) (cleaned up).  Generally, the harmfulness of the error is clear.  *Id.*  This Court considers "the likelihood" of a different result had the error not occurred, "as well as how the error might impact the public perception of such proceedings."  *Id.* at 253-54.  The goal is to make a "case-specific

application of judgment, based upon examination of the record, not mandatory presumptions and rigid rules." *Id.* at 253 (cleaned up).

Moreover, fumbling the burden of proof is not a minor issue. The general rule across the federal circuits is to reverse when the burden is misassigned. *ComTran Grp., Inc. v. U.S. Dep't of Lab.*, 722 F.3d 1304, 1318 (11th Cir. 2013); *Lewis v. Heckler*, 808 F.2d 1293, 1298 (8th Cir. 1987); *R & R Farm Enters., Inc. v. Fed. Crop Ins. Corp., Dep't of Agric.*, 788 F.2d 1148, 1151 (5th Cir. 1986); *U.S. ex rel. Bilyew v. Franzen*, 686 F.2d 1238, 1248 (7th Cir. 1982); *White v. Washington Pub. Power Supply Sys.*, 692 F.2d 1286, 1289 (9th Cir. 1982); *Trotman v. Bd. of Trustees of Lincoln Univ.*, 635 F.2d 216, 231 (3d Cir. 1980).

Likewise, it is the usual practice of this Court and the Supreme Court to vacate and remand when the burden of proof has been misallocated by the district court. *See, e.g.*, *Weast v. Schaffer ex rel. Schaffer*, 377 F.3d 449, 456 (4th Cir. 2004), *aff'd*, 546 U.S. 49 (2005); *Schaffer ex rel. Schaffer v. Weast*, 554 F.3d 470, 474 (4th Cir. 2009); *JH ex rel. JD v. Henrico Cty. Sch. Bd.*, 395 F.3d 185, 197 (4th Cir. 2005) ("Accordingly, we have no choice but to remand all the way back to the Hearing Officer for a reweighing of the evidence under the correct burden of proof

allocation . . . ."); *Otto Gerdau Co. v. Lambert's Point Docks, Inc.*, 733 F.2d 343, 346 (4th Cir. 1984); *Owen v. Com. Union Fire Ins. Co. of N.Y.*, 211 F.2d 488, 489 (4th Cir. 1954).

Exceptions, of course, do exist. The Fifth Circuit has given the best description of what an exceptional case might look like: "We think that misallocation might be harmless, for instance, if summary judgment were appropriate for the party who had prevailed, that is, if the losing party had raised no genuine issue of material fact." *Whiteside v. Gill*, 580 F.2d 134, 139 (5th Cir. 1978). But this is the exception, not the rule, because "[t]his class of cases seems small." *Id.*

Still, Newmark tries to shoehorn Capps's case into the mold of an opinion from this Court that did find a misallocation of the burden of proof to be harmless. Resp. Br. at 18 (quoting *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305 (4th Cir. 2001)). But that case is miles apart from this one.

The question in *Belk*—a school desegregation case—was whether the district court had clearly erred when it found as a fact that a school district had achieved "unitary status." 269 F.3d at 317-18. To determine unitary status, the district court was tasked with considering six factors.

*Id.* at 318. The appellants argued that the district court had impermissibly shifted to them the burden of proving one of those six—racial disparities in facilities. *Id.* at 326-27. This Court agreed, but found the error harmless. *Id.* at 327. Since the district court had found the disparities in the facilities to stem from non-racial inputs like aging infrastructure and lack of funding, the district court was *compelled* to find this factor in favor of the school district, regardless of the placement of the burden. *Id.* at 328.

Here, in contrast, the misallocated burden did not merely impact one of six factors in a multi-factor balancing test, nor was Newmark legally entitled to judgment because of some unavoidable underlying fact. Rather, the district court misassigned the burden on the central question: Did Newmark have cause to terminate Capps? In such a hotly contested case, Capps deserved to have the burden of proof allocated correctly. Anything less casts doubt on the fairness of the trial.

## II.    Newmark Failed to Prove That Capps Materially and Incurably Breached the Contract.

Even if the district court is not reversed for flipping the burden of proof, the court should be reversed anyway for misapplying the law governing contractual curability and materiality.

## A.    Curability is a question of law reviewed de novo.

Newmark argues that curability is a question of fact reviewed for clear error.  Resp. Br. at 28.  Newmark is wrong.

Below, the parties did not offer conflicting evidence to the district court on interpreting this term.  Rather, the parties treated "curable" as the legal term of art that it is.  What the contractual term "curable" means, like the interpretation of the rest of a contract, is a question of law reviewed de novo.  *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 280 (4th Cir. 2004) (reviewing de novo what a contract's notice-and-cure provision required of a terminating party).

Even if this Court were to determine that curability is factual, that would not help Newmark.  This Court reviews factual determinations entered after a bench trial for clear error.  Fed. R. Civ. P. 52(a)(6); *Raleigh Wake Citizens Ass'n v. Wake Cty. Bd. of Elections*, 827 F.3d 333, 340 (4th Cir. 2016).  But there is no clear-error deference "if the trial court bases its findings upon a mistaken impression of applicable legal principles," or makes findings "using incorrect legal standards."  *Id.* (cleaned up).

Deference falls away when the wrong law is applied because clear-error review should ensure that the "fact-finding processes" are free from

error, regardless of the facts being found. *Miller v. Mercy Hosp., Inc.*, 720 F.2d 356, 361 (4th Cir. 1983). But here the district court has precluded appellate review of the fact-finding process by failing to state what law it was applying to determine curability. Indeed, it is impossible to understand from the district court's opinion what the court believed the contractual phrase "to the extent curable" meant. That failure is especially important because the standard of incurability argued by Newmark was legally incorrect. *See* Opening Br. at 28-30.

On appeal, Newmark has abandoned the time-machine theory it argued below. Resp. Br. at 31-32. It argues instead that the district court wasn't required to say what law it was applying. Resp. Br. at 30. To be sure, the district court may not have been required to show *all* its work, but it at least had to state what curability requires in general terms. Because it failed to state any standard, it's impossible for this Court to do a clear-error analysis. Just like this Court would not allow a district court to forgo instructing a jury, to instruct a jury incorrectly, or to state the wrong standard in a bench opinion, neither should a district court escape clear-error review by omitting the legal standard altogether.

Because the district court failed to state what it thought "curable" meant, this Court's review of the "fact-finding processes" is impeded, rendering the decision below clearly erroneous and subject to de novo review. *See Klein Indep. Sch. Dist. v. Hovem*, 690 F.3d 390, 397 (5th Cir. 2012) ("Factual findings made under an erroneous view of controlling legal principles are reviewed de novo.").

## B.    Newmark has mangled the law of curability.

Newmark's argument on appeal, like the district court's analysis below, amounts to striking Capps's notice-and-cure rights from the contract.

Cure rights are valuable rights that courts do not discard lightly. They not only "promote[] protection of contract expectations and avoidance of waste, but also prevent[] forfeiture of the contract rights of the breaching party." William H. Lawrence, *Cure After Breach of Contract Under the Restatement (Second) of Contracts*, 70 Minn. L. Rev. 713, 733 (1986). As a district court in this Circuit explained, in a survey of curability cases from across the country, a breaching party cures its breach if "it begins to substantial[ly] perform its contractual obligations." *Moses H. Cone Mem'l Hosp. Operating Corp. v. Conifer Physician Servs., Inc.*,

No. 1:13CV651, 2017 WL 1378144, at *4 (M.D.N.C. Apr. 11, 2017) (collecting cases).

A material breach usually becomes incurable only if "timely performance is so essential that any delay immediately results in discharge" of the terminating party's further obligations. Restatement (Second) of Contracts § 242 cmt. a (Am. Law Inst. 1981). That rule is especially important in cases like this one, which involve a term contract to be performed over many years: "Where performance is to extend over a period of time, . . . so that a continuing relationship between the parties is contemplated, the injured party may be expected to give *more* opportunity for cure than in the case of an isolated exchange." *Id.* cmt. b (emphasis added). Here, the parties were halfway through a seven-year contract, but Newmark has treated this lengthy contract as providing Capps with a narrower cure right, not a broader one.

On appeal, rather than explain the meaning of cure rights, Newmark proposes that the contract allowed it to terminate Capps *without* an opportunity to cure if Capps had committed a material breach that goes to the "root" of the matter or "essence" of the contract. Resp. Br. at 20, 31-32. But that is just a restatement of the *definition* of "material

breach"—one that "go[es] to the root of the agreement between the parties." *Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 678 (2d Cir. 1989) (internal quotations omitted) (applying New York law). In other words, Newmark is just asking this Court to strike the notice-and-cure requirement out of the contract. Other courts have rejected this sleight-of-hand. *See, e.g.*, *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 689 (S.D.N.Y. 2011) ("As an initial matter, adopting the Company's interpretation would render the notice and opportunity to cure provision meaningless.").

The case cited by Newmark suggests that, at "common law," a material breach of contract allows the non-breaching party to terminate immediately "without opportunity to cure." *Southland Corp. v. Froelich*, 41 F. Supp. 2d 227, 246 (E.D.N.Y. 1999). *Froelich* does not correctly state the common law.

At common law, a material breach of contract allows the victim to recover damages and suspend its own performance; the victim, however, cannot terminate the contract until the breaching party is given a reasonable time to cure:

> An injured party's right of termination, however, is limited by the doctrine of cure. "Although a material breach

justifies the injured party in exercising a right to self-help by suspending performance, it does not necessarily justify the injured party in exercising such a right by terminating the contract. Fairness ordinarily dictates that the party in breach be allowed a period of time—even if only a short one—to cure the breach if it can. If the party in breach does cure within that period, the injured party is not justified in further suspension of its performance and both parties are still bound to complete their performances."

*Sinco, Inc. v. Metro-N. Commuter R. Co.*, 133 F. Supp. 2d 308, 312 (S.D.N.Y. 2001) (quoting E. Allan Farnsworth, *Farnsworth on Contracts* § 8.18 (2d ed. 1998)). This rule is also the position of the Restatement. Restatement (Second) of Contracts § 237 (Am. Law Inst. 1981). And New York courts follow this rule. *See, e.g.*, *Rebecca Broadway Ltd. P'ship v. Hotton*, 37 N.Y.S.3d 72, 79 (App. Div. 2016) ("Any such material breach by RBLP, before the breach by Thibodeau, would have given Thibodeau grounds to suspend his own performance and, absent a timely cure by RBLP of its breach, to terminate his contract with RBLP (and then, perhaps, to seek damages for breach)."); *U.W. Marx, Inc. v. Koko Contracting, Inc.*, 2 N.Y.S.3d 276, 278 (App. Div. 2015); *Tchrs. Ins. & Annuity Ass'n of Am. v. Coaxial Commc'ns of Cent. Ohio, Inc.*, 807 F. Supp. 1155, 1159 (S.D.N.Y. 1992).

Regardless of *Froelich*'s errors, the case is irrelevant here because Capps and Newmark struck a deal that differed from the "common law" rule *Froelich* purported to apply. The agreement here allowed Newmark to terminate for cause only if (1) there was a "material breach by [Capps] of any of the provisions of this Agreement," that (2) "to the extent curable . . . is not cured within thirty (30) days of written notice to [Capps] from the [Newmark]." (J.A. 2276). Thus, the question of curability only ever arises once there has been a material breach.

Under Newmark's interpretation of the contract, written notice is never required because, once there is a material breach, Capps's cure rights disappear. But if that's true, then Capps never had any cure rights. In short, Newmark persuaded the district court to collapse the materiality and curability requirements into a single materiality inquiry. (J.A. 2246-48 (district court opinion)). That, however, is not what the contract says.

Because Newmark terminated without notice, Newmark had to prove both (1) Capps materially breached the agreement and (2) that this breach was incurable. Newmark failed on both fronts.

### C. Newmark failed to prove that Capps's purported breaches were material and incurable.

For the three causes of termination cited by Newmark, each was immaterial, or else cured or curable. After the alleged misconduct at issue, Capps substantially performed all his contractual obligations.

First, Capps's alleged unprofessional conduct toward his colleagues could not have been incurable. Newmark offered virtually no evidence to support the allegation at trial.[1] Newmark seems to rely on a passing mention in the district court's opinion to Capps's purported conduct toward an outside consultant, who, Newmark claims, feared Capps. Resp. Br. at 3-4. But the district court could not have intended for this to support its conclusion because the consultant specifically denied fearing Capps. (J.A. 743). Instead, she complimented Capps's leadership style and described him as a "good teacher." (J.A. 718-19). She even gave him a big hug on the day of her deposition. (J.A. 759-60). Nor could Newmark

---

[1] Newmark cites triple hearsay from Hopper, who testified that he had heard that some colleagues had said that they were afraid of Capps, but that Hopper wasn't. Resp. Br. at 3 (citing J.A. 1806-09). The court presumably disregarded this improper evidence. *See Harris v. Rivera*, 454 U.S. 339, 346 (1981) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions.").

have been relying on the consultant when it fired Capps because no one at Newmark had ever spoken with her. (J.A. 752-54).[2]

Anyway, after Capps received a verbal warning from HR, there is no evidence he acted unprofessionally toward his colleagues.[3] The only colleague he continued working with was Hopper, who testified that Capps treated him well.[4] (J.A. 1706, 1776-77).

Newmark argues that "Capps admitted he continued to use foul language and act aggressively toward other teammates after the warning." Resp. Br. at 39 (citing J.A. 1768). No such admission exists.

---

[2] Newmark also tries to deflect the egregious misconduct of some of its other employees by claiming "[n]one of this is in the record." Resp. Br. at 38. That statement is false. It is in the record and backed up by nine record citations in the opening brief. Opening Br. at 35-36.

[3] Newmark cites the district court's opinion to say that Capps "did not change his behavior" in how he acted toward his colleagues. Resp. Br. at 5 (citing J.A. 2210). It's unclear what the district court meant by this, since there was *no* evidence introduced at trial to suggest that Capps had any conflict with any colleague after talking to HR. If the district court relied on this for its curability conclusion, then it was clearly erroneous.

[4] In several places, Resp. Br. at 22, 24, Newmark argues that Hopper reported to Capps, hoping to insinuate that Capps knew about Hopper's equity-clause scheme. But Hopper only reported to Capps for Capps's own clients. The developers to which Hopper sent the equity-clause agreements were not Capps's clients. (J.A. 1261). So Newmark's point is irrelevant.

Newmark's record citation comes from Hopper's testimony, not Capps's. And that transcript page does not involve any discussion of misconduct. Newmark's argument is unsupported and unsupportable.

Barry Gosin, Newmark's CEO, was also aware of HR's investigation when he rewarded Capps with a contractual extension and signing bonus; he disregarded the allegations because HR's investigation had "acquitted" Capps. (J.A. 1522). Newmark complains that it shouldn't be punished for this "peace offering." Resp. Br. at 40. But Capps's point isn't to punish with waiver. Rather, the point is that Gosin's offer showed that the conduct wasn't a material breach, or, if it were, that the breach was already cured. Thus, this asserted ground for termination with cause was either immaterial, curable, or cured at the time of termination.

Gosin's testimony also rebuts another point Newmark makes in its response—that it could "elect" to terminate its contract with Capps if Capps breached. Resp. Br. at 33 (quoting *Alesayi Beverage Corp. v. Canada Dry Corp.*, 947 F. Supp. 658, 668 (S.D.N.Y. 1996), *aff'd*, 122 F.3d 1055 (2d Cir. 1997)). But Newmark misses the other part of *Alesayi*: "If the non-breaching party elects to continue performance," as Newmark did after its HR investigation, "it may not later choose to terminate the

contract on account of the breach." *Alesayi*, 947 F. Supp. at 668. Newmark, however, tried to do both, which is not allowed.

*Alesayi* also warns that, if the non-breaching party chooses to continue performance after breach, "notice of the breach [must be] given to the breaching party." *Id.* That also never happened.

Second, like the district court, Newmark still refuses to perform the proper analysis: explaining why the "unprofessional conduct" and accessing of travel records constituted breaches of contract that were both material and incurable. Without that analysis, this Court may infer that these two allegations of misconduct *do not* meet the legal tests for materiality and incurability. Indeed, when a district court fails "to explain how [a party's] purported breach was material," this Court has recognized that the district court is "in error." *Rohan*, 375 F.3d at 281.

Finally, the purported equity-clause issues were not incurable. Newmark argues that it need not distinguish its treatment of Capps from its treatment of Hopper and Senter, arguing that it can "elect" to terminate whomever it wills. Resp. Br. at 33. Perhaps, but it's not credible to call the same conduct "curable" as to one person and "incurable" as to the other.

Newmark digs in its heels on this point, but all it does is undermine its own position. Newmark provided written notice and imposed cure obligations on Hopper. (J.A. 2373). Hopper's cure obligations were to run all broker agreements through legal going forward. (J.A. 2373). But, on appeal, Newmark says that this was a meaningless gesture, not intended as a real cure, because its brokers are already required to get prior approval of the legal department for these documents. Resp. Br. at 32-33; (J.A. 2650). The "disciplinary" letter to Hopper was issued *after* Capps was terminated and sued, so it has always appeared to be a sham. Now, Newmark admits that the letter is meaningless, proving the insincerity.

Newmark also makes much of Capps's statement, during the internal interview, that he wanted to see if his signature was on the Holder agreement. Resp. Br. at 10, 34. Indeed, Newmark asked the district court to infer its whole case from that statement. (J.A. 2142-43, 2174-75). The district court, however, inferred nothing from it. (J.A. 2235-36). Which made sense: there's nothing unusual about an employee at a

hostile interrogation by in-house counsel asking questions about the documents being presented.[5]

* * *

For all these reasons, the district court's incurability determination (and materiality determination for the equity-clause issue), are unsalvageable. The district court did not apply any relevant legal standard to reach its conclusions, and Newmark's appellate efforts have done nothing but highlight the errors below.

## III. Newmark Can Be Held Liable for Aiding and Abetting Breaches of Fiduciary Duty.

To justify the dismissal of Capps's aiding-and-abetting claim, Newmark offers a revisionist history of the claim's development in North Carolina. In reality, North Carolina courts have not rejected this cause of action, one panel of the North Carolina Court of Appeals has recognized it, and many federal district courts have predicted that the Supreme

---

[5] Separately, Newmark's brief cites the district court's opinion as saying that Sonic introduced Capps to one of the developers. Resp. Br. at 25 (citing J.A. 2266). But the court's opinion correctly notes that Sonic introduced *Hopper* to the developer. (J.A. 2266). Unfortunately, several citations and record assertions in Newmark's brief are, like this one and the others noted, materially wrong.

Court of North Carolina would join the majority of other states in recognizing it.

North Carolina first breathed life into the cause of action when the Supreme Court approved of the Restatement section from which such liability derives. *See Boykin v. Bennett*, 118 S.E.2d 12, 16 (N.C. 1961). *Boykin* explained that aiding-and-abetting liability exists when a defendant knows that a third person is breaching a legal duty, and the defendant assists or encourages the breach of that duty. *Id.* at 731; *Stetser v. TAP Pharm. Prod., Inc.*, 598 S.E.2d 570, 583 (N.C. Ct. App. 2004) ("Our Supreme Court [in *Boykin*] has adopted this section [876] of the Restatement as it is applied to the negligence of joint tortfeasors."); *Gilbert v. Bagley*, 492 F. Supp. 714, 735 (M.D.N.C. 1980) ("The North Carolina Supreme Court [in *Boykin*] has approved of Restatement § 876 and its theory thus is incorporated into the state's common law.").

The circumstances contemplated in *Boykin* are present here. Newmark knew that Katz owed fiduciary duties to Capps, but since Newmark encouraged and helped him breach those duties, Newmark is also liable. (J.A. 72). As one trial court explained, this liability is important because "the abettor may not stand in a fiduciary relationship to the victim.

Rather than altering or expanding the well-established definitions of fiduciary relationships, the courts will likely use aiding and abetting breach of fiduciary duty as a better vehicle to accomplish liability for equally culpable acts." *Sompo Japan Ins. Inc. v. Deloitte & Touche, LLP*, No. 03 CVS 5547, 2005 WL 1412741, at *4 (N.C. Bus. Ct. June 10, 2005).

After *Boykin*, and relying on it, the Court of Appeals expressly recognized that a defendant could aid and abet a breach of fiduciary duty. *Blow v. Shaughnessy*, 364 S.E.2d 444, 447 (N.C. Ct. App. 1988). *Blow* was specifically about aiding and abetting a breach of fiduciary duty in the securities-fraud context. *Blow* addressed a claim involving state securities law, but considered, in passing, federal cases allowing analogous claims. *Id.* at 447-48. Following the Restatement, *Blow* held that the trial court correctly instructed the jury on the meaning of substantial assistance. *Id.* at 449.

Other courts then relied on *Blow* to recognize claims for aiding and abetting. *See, e.g.*, *Duke Energy Int'l, L.L.C. v. Napoli*, 748 F. Supp. 2d 656, 669 (S.D. Tex. 2010) (applying North Carolina law); *Ahmed v. Porter*, No. 1:09CV101, 2009 WL 2581615, at *22 (W.D.N.C. June 23, 2009) ("North Carolina courts have recognized an aider and abettor theory for

breach of fiduciary duty . . . ."); *In re EBW Laser, Inc.*, No. 05-10220C-7G, 2008 WL 1805575, at *1 (Bankr. M.D.N.C. Apr. 21, 2008) ("[T]he Supreme Court of North Carolina would recognize a claim for aiding breach of fiduciary duty . . . ."); *In re Parmalat*, 383 F. Supp. 2d 587, 600 (S.D.N.Y. 2005) ("The North Carolina Court of Appeals has recognized a cause of action for aiding and abetting breach of fiduciary duty."); *In re Lee Memory Gardens, Inc.*, 333 B.R. 76, 80 (Bankr. M.D.N.C. 2005); *In re Vendsouth, Inc.*, No. 00-10112C-7G, 2003 WL 22399581, at *16 (Bankr. M.D.N.C. Oct. 10, 2003) ("North Carolina law recognizes a cause of action for aiding and abetting breach of fiduciary duty."); *Bankard v. First Carolina Commc'ns, Inc.*, No. 89 C 8571, 1991 WL 268652, at *13 (N.D. Ill. Dec. 5, 1991) ("North Carolina law controls on this issue and it does recognize such a claim, as do a majority of jurisdictions."); *Greensboro Rubber Stamp Co. v. Se. Stamp & Sign, Inc.*, No. COA10-914, 2011 WL 2462933, at *6 (N.C. Ct. App. June 21, 2011); *Holmes v. Young*, 885 P.2d 305, 308 (Colo. Ct. App. 1994); *Shelter Mut. Ins. Co. v. White*, 930 S.W.2d 1, 3 n.4 (Mo. Ct. App. 1996); *Future Grp., II v. Nationsbank*, 478 S.E.2d 45, 50 (S.C. 1996), *overruled in part on other grounds by Paradis v.*

*Charleston Cty. Sch. Dist.*, 861 S.E.2d 774 (S.C. 2021); *Chem-Age Indus., Inc. v. Glover*, 652 N.W.2d 756, 773 (S.D. 2002).

Indeed, this Court was among those to rely on *Blow*. *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 350 (4th Cir. 1998).

Some courts remained skeptical after *Blow*, but even the skeptics assumed that the claim would apply in circumstances like those here, where the abettor provided substantial assistance to a fiduciary breaching his duties. *See, e.g.*, *Battleground Veterinary Hosp., P.C. v. McGeough*, No. 05 CVS 18918, 2007 WL 3071618, at *7 (N.C. Bus. Ct. Oct. 19, 2007) (Diaz, J.).

Newmark suggests that a sea change occurred in *Bottom v. Bailey*, 767 S.E.2d 883 (N.C. Ct. App. 2014). Resp. Br. at 41. While casting doubt on *Blow* in the securities context, *Bottom* did not overrule it: "we need not address whether a claim for aiding and abetting a breach of fiduciary duty exists at law in North Carolina." *Bottom*, 767 S.E.2d at 889. As a different district court explained, "the claim for assisting a breach of fiduciary duty would still survive in North Carolina today" because *Blow* was based on "tort principles" rather than "security law violations." *Equitable Life Assurance Soc'y of U.S. v. Am. Bankers, Ins. Co.*, No. 88-535-

CIV-5-H, 1995 U.S. Dist. LEXIS 10880, at *34 (E.D.N.C. May 12, 1995). This case, of course, also falls outside the securities context.

Newmark also insists that the district court performed an *Erie* analysis. The district court, however, gave an *Erie prediction* without *analysis*. An *Erie* analysis would have started with the Supreme Court's decision in *Boykin*, recognized the conflict among panels of the Court of Appeals, and then turned to the Restatement, "general rules or policies" by the Supreme Court, and the "practices of other states." *See Wade v. Danek Med., Inc.*, 182 F.3d 281, 286 (4th Cir. 1999); *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 957 F.2d 1153, 1156 (4th Cir. 1992). The district court merely noted that the answer was unclear under existing law, and never consulted additional authorities. (J.A. 153).

By contrast, just a few years ago, Judge Flanagan applied this same Restatement provision in a thorough *Erie* analysis, very much *unlike* the analysis given in this case. *See Lee v. Certainteed Corp.*, 123 F. Supp. 3d 780, 799 (E.D.N.C. 2015) ("Section 876 has indeed been recognized as North Carolina law by the state's intermediate court . . . ."); *id.* at 798 ("[T]hat part of *Blow* noting the adoption of Section 876 has not been specifically overruled . . . .").

Despite this confusion, Newmark boldly states that the Court of Appeals has been "resoundingly consistent in refusing to recognize this cause of action." Resp. Br. at 43. Yet the cases cited by Newmark simply declined to take a position on the question. *Veer Right Mgmt. Grp., Inc. v. Czarnowski Display Serv., Inc.*, 822 S.E.2d 597, 598 (2019) (holding that the elements of the cause of action were not met, whether or not such liability exists under state law); *Bottom*, 767 S.E.2d at 889; *Ehrenhaus v. Baker*, 717 S.E.2d 9, 29 (N.C. Ct. App. 2011) ("We elect not to delve into whether such a claim exists . . . .").

As Capps's opening brief explained, there is every reason to think that the Supreme Court of North Carolina would hold Newmark liable for aiding and abetting Katz in the breach of his fiduciary duties. Indeed, there is no good reason why someone should be allowed to knowingly encourage a fiduciary to breach his duties and then walk away without consequence. Newmark has never tried to offer a reason why the law should tolerate its misbehavior.

## IV. Capps Stated a Claim for Civil Conspiracy.

Capps asserted a claim against Newmark for conspiring with Katz and Harris to breach the fiduciary duties they owed to Capps.

Newmark's arguments for affirmance are essentially non-responsive to Capps's opening brief.

The opening brief explained that a plaintiff can sue a co-conspirator who entered into a conspiracy with another to commit a tort, and conspiracy liability persists even if the plaintiff dismisses, settles with, or never sues the other co-conspirators. Opening Br. at 62. If *any* of the co-conspirators took an overt act in furtherance of the conspiracy, all co-conspirators are jointly and severally liable. *See id.*

Newmark, however, argues that because Capps settled with Katz and Harris, Capps could not hold Newmark responsible as a co-conspirator. Resp. Br. at 49. Newmark ignores the authorities in Capps's opening brief. Under North Carolina law, "it does not matter if other co-conspirators are dismissed, since conspiracy liability is 'joint and several.'" Opening Br. at 62 (citing *Burns v. Gulf Oil Corp.*, 98 S.E.2d 339, 344 (N.C. 1957)). As *Burns* explains, "[a]ll conspirators may be joined as parties defendant in an action for the damages caused by their wrongful act, although it is not necessary that all be joined; an action may be maintained against only one. The liability of [the named defendant] is to be determined on the same basis as if it were the sole defendant, either originally

or by reason of voluntary nonsuit as to the individual defendants."
*Burns*, 98 S.E.2d at 344; *accord Koch Measurement Devices, Inc. v.
Armke*, No. 12 CVS 3478, 2013 WL 5639221, at *6 (N.C. Super. Ct. Oct.
14, 2013) ("If proven, these allegations could result in liability for Walsak
regardless of the presence of Armke in this action.").  Newmark's brief
pretends *Burns* doesn't exist.

Capps's complaint adequately pleaded an underlying tort—breach
of fiduciary duty—and that Newmark conspired with Harris and Katz to
commit the tort.  (J.A. 75).  The complaint is littered with factual allega-
tions of the overt actions taken by Harris and Katz (and even Newmark)
to breach the fiduciary duties.  (J.A. 58-68).  That is precisely the circum-
stance for civil conspiracy.

Newmark's brief includes a throwaway argument that, if Capps
thought the district court erroneously dismissed the civil conspiracy
claim, then Capps should have moved for reconsideration.  Resp. Br. at
49-50.  An appeal is a "belated juncture," says Newmark, for correcting a
trial court's errors.  *Id.* at 50.

Newmark's argument is unburdened with any legal citation.  In re-
ality, reconsideration motions are not required to preserve error for

appeal. *See, e.g.*, *Henry A. Knott Co. v. Chesapeake & Potomac Tel. Co.*, 772 F.2d 78, 81 n.3 (4th Cir. 1985) (explaining that a party is not "required" to file a motion for reconsideration "in order to preserve his right to an appeal"); *Laber v. Harvey*, 438 F.3d 404, 422 n.17 (4th Cir. 2006); *Walker v. Abbott Labs.*, 340 F.3d 471, 475 (7th Cir. 2003). An appeal is the appropriate juncture for correcting district-court errors.

## V. Newmark's Misconduct Was "In or Affecting Commerce."

Newmark does not dispute that the CTG Partnership was an autonomous and portable business. Nor does Newmark dispute that Capps and Newmark lacked an employment relationship. And Newmark does not dispute that its misconduct has affected commerce by destroying Capps's ability to compete in the marketplace.

Rather than dispute these points, Newmark merely says this case is like *White v. Thompson*, 691 S.E.2d 676 (N.C. 2010). But *White* merely addresses application of the commerce requirement in the context of a claim by one partner against another. The case involved one of three partners in a business who breached his fiduciary duties to his other partners by usurping the partnership's business opportunities. *Id.* at 680. The defendant unfairly "interacted only with his partners, [so] his

conduct occurred completely within the . . . partnership and entirely out-side the purview of the Act." *Id.* But, the Court explained, had the de-fendant's unfair conduct "occur[ed] in his dealings" with an entity outside the partnership, then the commerce requirement would likely have been met. *Id.*

*White* might provide a defense for Katz or Harris against a section 75-1.1 claim by Capps. But *White* does not speak to a claim against New-mark. Newmark was not a partner within CTG. Newmark interacted with CTG but did not act as a participant within CTG. (J.A. 77 ¶ 162). It is Newmark's intermeddling in the CTG Partnership that was the un-fair conduct alleged in the complaint. (J.A. 77 ¶ 163). And that kind of misconduct, involving distinct market participants, falls within the com-merce requirement.

## CONCLUSION

For these reasons, and those stated in the opening brief, the judg-ment of the district court should be reversed.

This 4th day of October, 2021.

/s/ Troy D. Shelton
Troy D. Shelton
Matthew Nis Leerberg

FOX ROTHSCHILD LLP
P.O. Box 27525
Raleigh, NC 27611
(919) 755-8700

*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, table of contents, table of citations, signature block, certificates of counsel), this document contains 6,149 words.

This document complies with the typeface requirements because it has been prepared in a proportional spaced typeface using Microsoft Word in 14-point Century Schoolbook.

Dated:  October 4, 2021.

Respectfully submitted,

/s/ Troy D. Shelton
Troy D. Shelton
Matthew Nis Leerberg
FOX ROTHSCHILD LLP
P.O. Box 27525
Raleigh, NC 27611
(919) 755-8700

*Counsel for Appellant*